**FILED**

DEC - 8 2014

Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

GEORGE MAY AS ALTER EGO OF HIS
DISSOLVED FLORIDA CORPORATIONS
ET. AL.
3308 FLORIDA BLVD,
PALM BEACH GARDENS
FLORIDA 33410
PH./FAX. 561-290-4384

Case: 1:14-cv-02075
Assigned To : Collyer, Rosemary M.
Assign. Date : 12/8/2014
Description: Pro Se Gen. Civil

                    PLAINTIFF,

VS.

UNITED STATES OF AMERICA

                    DEFENDANT

---

REQUEST FOR EX PARTE ORDER, COMPLAINT TO HONORABLE
JUDGE RICHARD W. ROBERTS FOR EMERGENCY MOTION, ORDER,
COMPLAINT FOR REPLEVIN, DETINUE, FOR ORDER TO SEIZE
PROPERTY, MONEY FROM THE UNITED STATES OF AMERICA
TREASURY PURSUANT TO THE UNITED STATES OF AMERICA
CONSTITUTION, AMENDMENT FIVE, FOURTEEN, UCC LIEN LAW
ARTICLE 9, FEDERAL RULE OF CIVIL PROCEDURE 64,
FLORIDA STATUTES 78, §812.014, DC CODE §22-3251-3252.

THE PLAINTIFF GEORGE MAY BRINGS THIS REQUEST, COMPLAINT,

EX PARTE ACTION TO RECOVER POSSESSION OF PERSONAL MONEY,

PROPERTY PURSUANT TO THE UNITED STATES OF AMERICA, FLORIDA

CONSTITUTION, AMENDMENT FIVE, FOURTEEN. UCC LIEN LAW

ARTICLE 9, FEDERAL RULE OF CIVIL PROCEDURE 64, FLORIDA

STATUTES 78, §812.014, DC CODE 22-3251-22-3252, IN SUPPORT

OF THIS REQUEST, ACTION, ORDER, COMPLAINT STATES:

1. This United states District Court has Jurisdiction

over this matter pursuant to the United States of America

Constitution, Amendment Five, Fourteen, UCC Lien Law,

-1-



Article 9, Federal Rule of Civil Procedure 64, Florida
Statutes 78, §812.014, DC Code §22-3251-22-3252, the
Habeas Corpus Act., based on the value of the personal
property, money claimed being:

> $131,500,000.00, plus interest from March
> 15, 2006.

2. Venue is proper as the defendant   resides, are
located in this County, George May, plaintiff,   money,
personal property is detained in Washington D.C. at
the Department of Treasury 1500 Pennsylvania Avenue, NW
Washington, D.C., and all acts pertaining to George May
plaintiff's claims identified in this verified complaint
took, are taking place in this County.

3. A complete list and valuation of the personal
property claimed by George May plaintiff is attached ti
this complaint and marked as Exhibit "A".

4. George May plaintiff is the owner of his property,
money claimed and is entitled to possession of the money,
property, because of the United States of America
Constitution, Amendment Five, Fourteen prohibits the
taking of his property, money, Limestone, Oil, Gas
Minerals, Contracts for Development without full, Complete
Compensation as does the Florida Constitution. Koch v.
Pinellas County, 6th Cir. Ct. 1953, 5 Fla. Supp. 116, See
2 Nicols on Eminent Domain, §5.78(3), Revised Third

-2-

Edition. Kirby Forest Industries, Inc., v. United States, 467 U.S. 1,6, (1984); United States v. Causby, 328 U.S. 256, 267, (1946); Florida Statutes §812, §876, et. seq. §74.091, DC Code §22-3251-22-3252, Federal Rule of Civil Procedure 64.

George May plaintiff interest in such property, money is based upon a written instrument the United States of America Constitution Contract, the State of Florida Constitution Contract.

5. George May plaintiff property, money is wrongfully being detained by the United States of America, defendant, George May plaintiff right to possession.

6. The means by which the United States of America defendant's took and came into possession of George May plaintiff property, money and the specific facts constituting detention against the rights of George May plaintiff to possession are as follows: the United States of America, defendant Condemned, took George May property, money for the United States of America, defendant for public purposes, possession without payment required by the United States of America Constitution thus committing fraud on the Court, unconstitutionally, to which no Statute of Limitations apply. Bulloch v. United States, 763 F.2d 115, 1121, Crosby v. Bradstreet Co. 312 F.2d 483.

7. To the best of George May plaintiff knowledge, and
information, belief the defendant's current business
address is 1500 Pennsylvania Avenue, NW, Washington, DC
20220.

8. To the best of George May plaintiff knowledge,
belief the property, money belonging to George May plaintiff
at issue is located at the following address:

> The United States Department of Treasury
> 1500 Pannsylvania Avenue, NW, Washington
> DC. 20220.

9. George May plaintiff has made demand upon the
United States of America, defendant several times before
mentioned herein for return of George May plaintiff money,
property pursuant to the United States of America defendant
Constitution, the Florida Constitution, UCC Lien Law Article
9, the before mentioned herein State, Federal Laws. Attached
here is the demand, request for payment to George May
plaintiff: George May plaintiff has not received the money,
property from the United States of America, defendant
despite such demand and continues to be deprived of George
May use and enjoyment of his money, property.

10. George May plaintiff money, property at issue has
not been taken for a tax assessment or a fine pursuant to
statute.

11. Pursuant to the United States of America, Florida

Constitution, Federal Rule of Civil Procedure 64, the
before mentioned herein State, Federal Laws, George May
plaintiff is entitled to an immediate Order of this
Honorable Court, Judge directing the United States of
America, defendant to pay to George May, plaintiff
his money, property listed herein, or for a Order to seize
the money for payment to George May plaintiff including
interest required by Florida Statutes §73, §74, plus
damages for the wrongfull detention.

WHEREFORE, George May plaintiff respectfully requests
the following relief:

1. That this Honorable Court, Judge Richard W. Roberts
issue a Ex parte Order to Show Cause directed to the
United States of America, petitioner, and Jacob J.
Lew, and the United States Department of Treasury
to Show Cause why the money before mentioned herein
should not be taken from the United States of America,
defendant's the United States of America Treasury and
immediately delivered to George May plaintiff.

2. That this Honorable Court, Judge Richard W. Roberts
issue a Ex parte Order seizing the money from the
United States Department of Treasury, the United
States of America and immediately delivering the money
before mentioned herein to George May plaintiff as
required by the United States of America, Florida
Constitution, State, Federal Laws, Federal Rule of
Civil Procedure 64, UCC Lien Law Article 9.

3. That this Honorable Court, Judge, Richard W. Roberts
issue a Court award to George May plaintiff Court
Costs, Attorney Fee's (if any), plus other relief as
is just and proper.

I George May plaintiff swear/affirm under oath that I have read the foregoing complaint, request for Ex parte Order, request for seizure, Replevin, and delivery to George May plaintiff his money before mentioned herein, request for Habeas Corpus, Show Cause, and that my statements set forth herein are true and correct to the best of my knowledge.

I George May plaintiff hereby Certifies, Verifies, Declares under the penalty of Perjury under the Laws of the United States of America that the foregoing is true and correct, and that the foregoing is made to the best of my personal knowledge, and is made in good faith.

Respectfully submitted

George May as Alter Ego
of his dissolved Florida
Corporations Buy Today, Inc.,
Speculative Investments, Inc.,
Value Investments, Inc.,
Increased Value, Inc.
3308 Florida Blvd.
Palm Bch. Gardens
Fl. 33410
Ph./Fax. 561-290-4384

-6-

EXHIBIT

"A"

10/1/14

TO: CHIEF OF STAFF CRISTIAN A. WEIDEMAN
     THE DEPARTMENT OF THE TREASURY
     1500 PENNSYLVANIA AVENUE, NW
     WASHINGTON, D.C. 20220
     PH. 202-622-2000
     FAX. 202-622-6415


RE: MY JUDGEMENT AGAINST THE          REPLY REQUIRED TO AVOID
     UNITED STATES OF AMERICA          A SWORN AFFIDAVIT FOR
     CASE NUMBER 01-2559               YOUR ARREST FOR GRAND
     UNITED STATES DISTRICT COURT      THEFT PURSUANT TO DC
     SOUTHERN DISTRICT OF FLORIDA.     PENAL CODE §22-3201
                                       §§22-3251, §§22-3252

PLEASE FIND ENCLOSED MY JUDGEMENT FOR $131,500,000.00
PLUS INTEREST AT THE STATUTORY RATE FROM MARCH 15,
2006.

PLEASE SEND TO ME YOUR CHECK FOR THE AMOUNT OWED
TO ME TODAY CERTIFIED MAIL.

IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT ME.

THANK YOU FOR YOUR HELP.


                         YOURS TRULY



                         GEORGE MAY
                         P.O. BOX 32247
                         PALM BCH. GARDENS
                         FL. 33420
                         PH./FAX. 561-290-4384

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FILED by _____ D.C.

APR 17 2012

STEVEN M. LARIMORE
CLERK U.S. DIST CT.
S.D. of FLA. – MIAMI

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                         CASE NO. 01-2559

37.5 ACRES OF LAND IN DADE
COUNTY, FLORIDA ET. AL.            *LIMESTONE*

       Defendant's

## MOTION FOR ENTRY OF DEFAULT

   George May, defendant here requests that the Clerk of the
United States District Court, Southern District of Florida
enter default against the United States of America, plaintiff
pursuant to Federal Rule of Civil Procedure 55(a). In support
of this request George May, defendant relies upon the record
in this case and his affidavit submitted herein.

Dated this _13_, day of April, 2012

George May
P.O. Box 32247
Palm Bch. Gardens
Fl. 33420
Ph. 305-508-5011

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                    CASE NO. 01-2559

GEORGE MAY AS ALTER EGO, LAST
REMAINING ASSET HOLDER OF HIS
DISSOLVED FLORIDA CORPORATIONS,
BUY TODAY, INC., SPECULATIVE
INVESTMENTS, INC., VALUE
INVESTMENTS, INC., INCREASED
VALUE, INC.,

        Defendant's

---

### DEFAULT JUDGEMENT

---

The United states of America, plaintiff having failed to
appear, plead or otherwise defend in this action, and default
having been entered, and attorney for George May as Alter Ego,
Last Remaining Asset Holder of Buy Today, Inc., Speculative
Investments, Inc., Value Investments, Inc., Increased Value,
Inc., defendant's having requested judgement against the
defaulted United States of America, plaintiff and having filed
a proper motion and affidavit in accordance with Federal Rule
of Civil Procedure 55(a) and (b).

Judgement is hereby entered in favor of George May Alter
Ego, Last remaining Asset Holder of his dissolved Florida
Corporations, Buy Today, Inc., Speculative Investments, Inc.,

-1-

ATTACHMENT / EXHIBIT 1

Value Investments, Inc., Increased Value, Inc., defendant's

and against the United States of America, plaintiff as follows:

The sum certain of $131,500,000.00, plus interest from
March 15, 2006, that George May as Alter Ego, Last
Remaining Asset Holder of His dissolved Florida
Corporations, Buy Today, Inc., Speculative Investments,
Inc., Value Investments, Inc., Increased Value, Inc.,
defendant's are to retain their Oil, Gas Rights, Right
to access for their Oil, Gas Well Drilling. Attached
herein is George May as Alter Ego, Last Remaining Asset
Holder of his dissolved Florida Corporations Buy Today,
Inc., Speculative Investments, Inc., Value Investments,
Inc., Increased Value, Inc., defendant's agreed order.


Dated this_____, day of May, 2012.


_____
CLERK U.S. DISTRICT COURT


-2-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Group 37 Cases as follows:

| | |
|---|---|
| United States of America, | Case No: 01-2559-CV-UNA/Turnoff |
| | Case No: 01-4044-CV-UNA/Turnoff |
| Plaintiff, | Case No: 01-3870-CV-UNA/Turnoff |
| vs | Case No: 01-4271-CV-UNA/Turnoff |
| 37.5 Acres of Land in Miami-Dade County, et al., | Case No: 01-1247-CV-UNA/Turnoff |
| Defendants. | Case No: 01-3373-CV-UNA/Turnoff |
| | Case No: 01-4390-CV-UNA/Turnoff |

_____/

## ORDER REQUIRING A RESPONSE TO DEFENDANT GEORGE MAY'S MOTION FOR ORDER TO SHOW CAUSE

THIS CAUSE is before the Court upon Defendant George Mays' Motions for Order to Show Cause which were filed on December 16, 2009.[1] See Case No: 01-2559-CV-UNA/Turnoff [D.E. 38], Case No: 01-4044-CV-UNA/Turnoff [D.E. 44], Case No: 01-3870-CV-UNA/Turnoff [D.E. 38], Case No: 01-4271-CV-UNA/Turnoff [D.E. 43], Case No: 01-1247-CV-UNA/Turnoff [D.E. 40], Case No: 01-3373-CV-UNA/Turnoff [D.E. 50], and Case No: 01-4390-CV-UNA/Turnoff [D.E. 35].

Upon review of the Motions, the court file, and being otherwise duly advised in the premises, it is hereby ORDERED AND ADJUDGED that Plaintiff, the United States of America shall file a written response as to each of the above-noted Motions within ten (10) days of the date of this

_____

[1]The Motions are dated October 30, 2009, but were not filed until December 16, 2009.

Order.

**DONE AND ORDERED** in Chambers at Miami, Florida on this ___ day of January 2010.

**WILLIAM C. TURNOFF**
**UNITED STATES MAGISTRATE JUDGE**

cc:     Counsel of Record

FindLaw    SUPREME COURT

View enhanced case on Westlaw
  KeyCite this case on Westlaw                    **http://laws.findlaw.com/us/274/341.html**
Cases citing this case: Supreme Court
Cases citing this case: Circuit Courts

# U.S. Supreme Court

## PHELPS v. UNITED STATES, 274 U.S. 341 (1927)

### 274 U.S. 341

### PHELPS
### v.
### UNITED STATES.
### No. 531.

**Argued March 3, 1927.**
**Decided May 16, 1927.**

[274 U.S. 341, 342]   Mr. H. S. Deming, of New York City, for petitioner.

Mr. H. J. Galloway, Asst Atty. Gen., for the United States.

Mr. Justice BUTLER delivered the opinion of the Court.

Plaintiffs were partners doing business as Phelps Bros. & Co.; the petitioner is the survivor. They owned a lease on Pier No. 7 of the Bush Terminal in New York Harbor. December 31, 1917, pursuant to an Act of August 29, 1916, c. 418, 39 Stat. 619, 645 (Comp. St. 1974a), and an Act of August 10, 1917, 10, c. 53, 40 Stat. 276, 279 (Comp. St. 3115 1/8 ii), the Secretary of War by direction of the President requisitioned that pier and other portions of the Bush Terminal for use in carrying on the war. Plaintiffs vacated, and the United States took possession of the property and continued to occupy it until May 14th, 1919. The Secretary's order stated that steps would be taken to ascertain fair compensation for the temporary use of the property; and a board of appraisers was created for that purpose. The plaintiffs continued to pay rent to the lessor, and, in accordance with the finding of the board, the amount of such payments, $ 79,890.42, was repaid to plaintiffs by the United States. The board also found the value per month of the use of the plaintiffs' property less the monthly rents paid. The amount calculated on that basis was not satisfactory to plaintiffs; they elected to take 75 per cent. of the award and there was paid them [274 U.S. 341, 343]   $44,733.79 on account. They sued to recover an amount sufficient to make up just compensation. The court found the value per day of the

use of their property; the amount calculated on that basis was $254,175.79 over and above the sums paid; and that amount was included in the judgment entered March 8, 1926. Petitioner was granted a writ of certiorari. 273 U.S. 67 , 47 S. Ct. 107, 71 L. Ed. -.

He contends that there should be added such sums as will produce the equivalent of the value of the use of the leased property paid contemporaneously, and that interest at a reasonable rate from the date of the use to the time of payment is a good measure of the amount to be added in order to make just compensation.

This action was brought under section 145 of the Judicial Code (Comp. St. 1136). That section gives to the Court of Claims jurisdiction to hear and determine 'all claims (except for pensions) founded upon the Constitution of the United States or ... upon any contract, express or implied, with the Government of the United States. ...' Section 177 ( Comp. St. 1168) provides that no interest shall be allowed on any claim up to the time of the rendition of judgment unless upon a contract expressly stipulating for its payment. Under the Fifth Amendment plaintiffs were entitled to just compensation, and, within the meaning of section 145, the claim is one founded on the Constitution. Moreover, it has long been established that where, pursuant to an act of Congress, private property is taken for public use by officers or agents of the United States, the government is under an implied obligation to make just compensation. That implication being consistent with the constitutional duty of the government as well as with common justice, the owner's claim is one arising out of implied contract. United States v. Great Falls Manufacturing Co., 112 U.S. 645, 656 , 5 S. Ct. 306; Duckett v. United States, 266 U.S. 149, 151 , 45 S. Ct. 38; Campbell v. United States, 266 U.S. 368, 370 , 45 S. Ct. 115. The distinction between the cause [274 U.S. 341, 344]   of action considered in United States v. North American Co., 253 U.S. 330 , 40 S. Ct. 518, and a taking under the power of eminent domain was pointed out in Seaboard Air Line Ry. v. United States, 261 U.S. 299 , 43 S. Ct. 354. Plaintiffs' property was taken before its value was ascertained or paid. Judgment in 1926 for the value of the use of the property in 1918 and 1919, without more, is not sufficient to constitute just compensation. Section 177 does not prohibit the inclusion of the additional amount for which petitioner contends. It is not a claim for interest within the purpose or intention of that section. Acts of Congress are to be construed and applied in harmony with and not to thwart the purpose of the Constitution. The government's obligation is to put the owners in as good position pecuniarily as if the use of their property had not been taken. They are entitled to have the full equivalent of the value of such use at the time of the taking paid contemporaneously with the taking. As such payment has not been made, petitioner is entitled to the additional amount claimed. Seaboard Air Line Ry. v. United States, supra, 304 (43 S. Ct. 354); Brooks-Scanlon Corp. v. United States, 265 U.S. 106, 123 , 44 S. Ct. 471; Liggett & Myers Tobacco Co. v. United States, 274 U.S. 215 , 47 S. Ct. 581

Judgment reversed.

**RESEARCH THE LAW**        Cases & Codes / Opinion Summaries / Sample Business Contracts / Research

**MANAGE YOUR PRACTICE**    Law Technology / Law Practice Management / Law Firm Marketing Services /

**MANAGE YOUR CAREER**      Legal Career Job Search / Online CLE / Law Student Resources

makes clear that it is designed not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking. Thus, government action that works a taking of property rights necessarily implicates the "constitutional obligation to pay just compensation." *Armstrong v. United States,* 364 U.S. 40, 49 (1960).

We have recognized that a landowner is entitled to bring an action in inverse condemnation as a result of ""the self-executing character of the constitutional provision with respect to compensation. . . .'" *United States v. Clarke,* 445 U.S. 253, 257 (1980), quoting 6 P. Nichols, Eminent Domain § 25.41 (3d rev. ed.1972). As noted in JUSTICE BRENNAN's dissent in *San Diego Gas & Electric Co.,* 450 U.S. at 654–655, it has been established at least since *Jacobs v. United States,* 290 U.S. 13 (1933), that claims for just compensation are grounded in the Constitution itself:

The suits were based on the right to recover just compensation for property taken by the United States for public use in the exercise of its power of eminent domain. *That right was guaranteed by the Constitution.* The fact that condemnation proceedings were not instituted and that the right was asserted in suits by the owners did not change the essential nature of the claim. The form of the remedy did not qualify the right. It rested upon the Fifth Amendment. Statutory recognition was not necessary. A promise to pay was not necessary. Such a promise was implied because of the duty to pay imposed by the Amendment. *The suits were thus founded upon the Constitution of the United States.*

*Id.* at 16. (Emphasis added.) [p316] *Jacobs,* moreover, does not stand alone, for the Court has frequently repeated the view that, in the event of a taking, the compensation remedy is required by the Constitution. *See, e.g., Kirby Forest Industries, Inc. v. United States,* 467 U.S. 1, 6 (1984); *United States v. Causby,* 328 U.S. 256, 267 (1946); *Seaboard Air Line R. Co. v. United States,* 261 U.S. 299, 304–306 (1923); *Monongahela Navigation, supra,* at 327. [n9]

It has also been established doctrine at least since Justice Holmes' opinion for the Court in *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393 (1922), that

[t]he general rule at least is that, while property may be regulated to a certain extent, if regulation goes too far, it will be recognized as a taking.

*Id.* at 415. While the typical taking occurs when the government acts to condemn property in the exercise of its power of eminent domain, the entire doctrine of inverse condemnation is predicated on the proposition that a taking may occur without such formal proceedings. In *Pumpelly v. Green Bay Co.,* 13 Wall. 166, 177–178 (1872), construing a provision in the Wisconsin Constitution identical to the Just Compensation Clause, this Court said:

It would be a very curious and unsatisfactory result, if . . . it shall be held that, if the

It is well settled that minerals, gas and oil are distinct properties which may be conveyed separately from the surface. *Copello v. Hart,* Fla.App. 1st, 1974, 293 So.2d 734. Where a fee in minerals is severed from the fee in the surface, it is subject to separate taxation. *Dickinson v. Davis,* Fla. 1969, 224 So.2d 262. Water, oil, minerals and other substances of value which lie beneath the surface are valuable property rights which cannot be divested without due process of law and the payment of just compensation. *Koch v. Pinellas County,* 6th Cir.Ct. 1953, 5 Fla. Supp. 116. *See* 2 Nichols on Eminent Domain, § 5.78(3), Revised Third Edition.

united.
STATES OF AMERICA
Constitution
PAYMENT MUST be
MAdo to George MAY

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: 04-000254 CACE 14

PARCEL NO.: 201-005

SOUTH FLORIDA WATER
MANAGEMENT DISTRICT.

       Petitioner,

v.

NORMAN SUPERSTEIN,
TRUSTEE, ET AL.

       Respondents.

_____/

## STIPULATION FOR SETTLEMENT AND FINAL JUDGMENT

The Petitioner, South Florida Water Management District, (hereinafter "SFWMD" or "District") and the Respondent, Norman Superstein, Trustee, hereby enter into this Stipulation for Settlement and Final Judgment with the complete terms as follows:

1.     On April 6, 2004, an Order of Taking was entered in the above referenced case pertaining to Parcel No.: 201-005.

2.     On or about April 24, 2004, the District served its Notice of Deposit and in fact deposited on or about said date the sum of FIVE MILLION SIX HUNDRED THOUSAND AND NO/100 DOLLARS ($5,600,000.00), for Parcel No.: 201-005, whereby Fee Simple Title to Respondent's property vested in the District.  Respondent withdrew from the Court Registry said $5,600,000.00 sum, less property taxes and liens.

3.     The District and Respondent hereby stipulate and agree that a valuation hearing with respect to Respondent's parcel is no longer necessary.   District and Respondent waives any and all rights to a valuation trial/hearing by way of the parties' full,



## Conversion of acres to tons

The specific gravity is a number that expresses the ratio between a material's weight and the weight of an equal volume of water. A limestone that has a specific gravity of 2.65 is 2.65 times heavier than an equal volume of water. A diabase that has a specific gravity of 2.95 is 2.95 times heavier than an equal volume of water.

One cu. ft. of water weight 62.4 lb. Since the limestone is 2.65 times heavier than an equal volume of water, 1 cu. ft. of limestone weighs about 165 lb. The diabase weighs about 184 lb./cu. ft.

An acre contains 43,560 sq. ft. and, at a thickness of 1 ft., contains 43,560 cu. ft. There are 2,000 lb. in a short ton. The limestone weighs about 3,600 tpa/ft. of thickness, or 3,600 tpa-ft. (165 lb./cu. ft. x 43,560 cu. ft./acre-ft./2,000 lb./ton). The diabase weighs about 4,000 tpa-ft. These are volume-tonnage conversion factors. A 100 ft. thickness of limestone and diabase contains about 360,000 tpa and 400,000 tpa, respectively, in the ground.

The average specific gravity of sand and gravel is difficult to quantify, owing to variations in the degree of packing and of water content, Dunn says. A factor of 111 lb./cu. ft. is commonly used for sand and gravel, equal to about 3,000 lb. or 1.5 tons/cu. yd. This equates to about 2,400 tpa-ft. (111 lb./cu. ft. x 43,560 cu. ft./acre-ft./2,000 lb./ton). A 50-ft. thickness of sand and gravel contains about 120,000 tpa, in the ground.

The average aggregate thickness on a property is calculated by averaging the thickness of bore holes contained within the mineable acreage. Equal spacing of holes is important. A clay pocket or sinkhole is accounted for by either averaging the thickness of mineable material in the clay pocket with the rest of the holes, or subtracting out the acreage contained in these anomalies.

Additional drill holes may be required to accurately quantify the acreage lost to clay pockets, karst, fault gouge or glacial scours. In estimating the thickness of a deposit, the top and floor of the deposit may need to be subtracted. Weathering commonly deteriorates surface rock to the point where it cannot be sold. A stable floor may require sellable stone being left.

**Example**   "I have 15 million mineable tons of stone on my property and the company makes $1.00/ton profit. My property is worth $15 million." PER ACRE

*CORRECT MATH FOR LIMESTONE, SAND*

| Table 1 | | | | | | |
|---|---|---|---|---|---|---|
| Annual Sales (tons) | Life (years) | Royalty Rate ($/ton) | Risk Rate (percent) | Total Sales (tons) | Value ($) | Value ($/ton) |
| 500,000 | 25 | $0.30 | 10 percent | 12,500,000 | $1,361,556 | $0.11 |
| | 25 | $0.40 | 10 percent | 12,500,000 | $1,815,408 | $0.15 |
| | 25 | $0.40 | 12 percent | 12,500,000 | $1,568,628 | $0.13 |
| | 40 | $0.30 | 10 percent | 20,000,000 | $1,466,858 | $0.07 |
| 750,000 | 25 | $0.30 | 10 percent | 18,750,000 | $2,042,334 | $0.11 |
| | 25 | $0.40 | 10 percent | 18,750,000 | $2,723,112 | $0.15 |
| | 25 | $0.40 | 12 percent | 18,750,000 | $2,352,942 | $0.13 |
| | 40 | $0.30 | 10 percent | 30,000,000 | $2,200,286 | $0.07 |
| 1,000,000 | 25 | $0.30 | 10 percent | 25,000,000 | $2,723,112 | $0.11 |
| | 25 | $0.40 | 10 percent | 25,000,000 | $3,630,816 | $0.15 |
| | 25 | $0.40 | 12 percent | 25,000,000 | $3,137,256 | $0.13 |
| | 40 | $0.30 | 10 percent | 40,000,000 | $2,933,715 | $0.07 |

Source: Associated Geologists Inc./Pit & Quarry

Case 1:14-cv-02075-RMC   Document 1   Filed 12/08/14   Page 20 of 21

# Michigan Appellate Digest

*[handwritten: OIL, GAS $10 Billion MY PROPERTY]*

**Miller Brothers v Department of Natural Resources**
COA# 145198
Released: February 22, 1994
Panel: Fitzgerald, Neff, CONNOR

203 Mich App 674; 513 NW2d 217 (1994), lv den 447 Mich 1038; 527 NW2d 513 (1994)

Consolidated with:

*[handwritten: SITS OVER THE SAME CANYON AS THE DEEPWATER HORRIZON]*

    145199 CARNAGEL OIL ASSOC V STATE OF MICHIGAN
    150573 MILLER BROTHERS V STATE OF MICHIGAN
    150574 CARNAGEL OIL ASSOC V STATE OF MICHIGAN

Property - Condemnation - Taking - Land Use Regulation

When private property is taken for public use, its owner must receive just compensation. A compensable taking occurs when the government uses its regulatory power to so restrict the use of property that its owner has been deprived of all economically viable use. ≜

Const 1963, Art 10 Sec 2, US Const, Am 5

Property - Condemnation - Taking - Land Use Regulation - Oil and Gas Drilling

Mineral interests in land have only one economically viable use: the extraction of any oil or gas which might be found under the land. To extract the oil or gas, a well is needed, and to drill a well, a permit by the Supervisor of Wells is required. The Director of the Department of Natural Resources is the Supervisor of Wells. In this case, the Director issued a determination of an area as the Nordhouse Dunes Area, and declared that no oil or gas exploration or development would be permitted in the area. The plaintiffs own or lease oil and gas rights in the area. The Director's action prevents the plaintiffs from extracting any oil or gas, and thus the government has so restricted the use of the plaintiffs' property rights that they have been deprived of all economically viable use. A taking has occurred. ≜

MCL 319.23, MCL 319.3(1)

Appeal and Error - Issue - Ripeness - Exhaustion of Remedies - Futile Remedy

A party need no be required to pursue a futile remedy. In this case, the Director's determination made it clear that no drilling would be permitted, and thus the plaintiffs were not required to apply for permits before pursuing a claim for inverse condemnation. ≜

Property - Condemnation - Valuation - Oil and Gas Rights

Generally, just compensation for condemnation is determined by referring to the fair market value of the property taken. However, the value of unproven oil and gas rights is uncertain and does not involve cash transactions. The value of oil and gas rights usually depends upon the amount of oil and gas found. In this case, the trial court considered a full range of

MEYER & O'CONNOR, LLC

QUARTERLY UPDAT



*UNITED STATES*

# Tortious Interference with Contract and Prospective Economic Advantage

*AGAINST GEORGE MAY*

This Quarterly Update[1] focuses on tortious interference with contract and tortious interference with prospective economic advantage.[2]

## Introduction

Claims for tortious interference with contract or prospective economic advantage can result in enormous judgments. *See, e.g., Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 4 (1987) (jury verdict in excess of $10 billion for tortious interference with contract); *JAM Sports & Entertainment, LLC v. Paradama Productions, Inc.*, 382 F. Supp. 2d 1056, 1058 (N.D. Ill. 2005) (jury verdict in excess of $90 million for tortious interference with contract and prospective economic advantage, although defendant later granted judgment as a matter of law on claim for tortious interference with prospective economic advantage). The reasons for such large potential damage awards are obvious: the underlying contract or business relationship at issue can be extremely valuable and, if the defendant's conduct is sufficiently egregious, punitive damages may be awarded in "economic interference" cases. *See, e.g., Pennzoil*, 481 U.S. at 4 (interference with acquisition of Getty Oil; jury verdict of $7.53 billion in actual damages and $3 billion in punitive damages); *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 290 (2d Cir. 2003) (affirming award of punitive damages for tortious interference with prospective economic advantage).

---

[1]  Meyer & O'Connor, LLC ("Meyer & O'Connor"), a trial and appellate firm focusing on complex commercial litigation, tort and general civil litigation, criminal defense and civil rights litigation, publishes a Quarterly Update that addresses significant legal developments. The Quarterly Update is an informational service for clients, friends and acquaintances of the firm (and attorney advertising) and is not legal advice and does not create an attorney-client relationship with Meyer & O'Connor.

[2]  "Tortious interference with prospective economic advantage" is the title used in some jurisdictions to refer to the tort claim that can arise when one wrongfully interferes with a significant business relationship that has not been reduced to contract. We refer to this tort by this title herein, but it should be noted that some jurisdictions refer to this tort by different titles. *See, e.g., Amaranth LLC v J.P. Morgan Chase & Co.*, 71 A.D.3d 40, 47, 888 N.Y.S.2d 489, 494 (Sup. Ct. App. Div. 1st Dept. 2009)(discussing "claim for tortious interference with business relations" and "complaint alleging tortious interference with prospective economic advantage" in reference to same claim).

---

Attorney advertising material. This material does not constitute legal advice or create an attorney-client relationship with Meyer & O'Connor, LLC. Please direct questions or comments regarding these materials to Timothy P. O'Connor, Meyer & O'Connor, LLC, Suite 3300, 135 South LaSalle Street, Chicago, IL 60603; (e) toconnor@meyeroconnor.com; (p) 312-346-9000.